The next case called is number 122654, Beaman v. Freesmeyer at L, agenda number 13. Counsel, are you ready? You may proceed. May it please the Court, Counsel, my name is David Shapiro. It is my honor to represent Alan Beaman. The defendants in this case stained our system of criminal justice through intentional wrongdoing, and a jury of Illinois citizens deserves the chance to make it right. The defendants' intentional misconduct caused the wrongful conviction, which destroyed Alan's life, dishonored the victim's memory, and left a dangerous killer on the streets. The or continuance of a prosecution, which they cause through intentional wrongful conduct. That is our standard, a significant role in the commencement or continuance of the prosecution, which the investigators cause through intentional wrongful conduct. Causation is an issue for without an investigation and a police file intentionally manipulated and curated to pin the crime on him. At minimum, a reasonable juror could find, looking at this lengthy disputed record, that the defendants were but for cause, because over many months they built a deliberately slanted file by disregarding and failing to investigate more plausible suspects, lying to the grand jury, doctoring time trials, and concealing evidence inculpating John Murray. Mr. Shapiro, can you tell us specifically what evidence that the defendants either misrepresented to or withheld from the state's attorney's office that led to the prosecution of Mr. Beaman that it otherwise wouldn't have? In terms of information that was withheld from the prosecution, the Murray polygraph was withheld from the prosecution. And Judge McDade found that a jury could find that defendant Warner intentionally withheld that polygraph. He went on to say, in footnote 8 of his opinion, that if that polygraph had been disclosed to the prosecutor, perhaps he would have viewed Murray as an alternative suspect. And of course, that polygraph was described by this court as indicating intentional evasion by John Murray and was one of the key pieces of evidence that led this court to upend Allen's conviction. How did the federal court deal with the polygraph? Because that was certainly a basis of the 1983 action. That's correct. What the district court... I guess I should also kind of ask the question, what effect does the district court's findings have on us? It's not preclusive because no one is arguing for a preclusion. Those are affirmative defenses. And I think that the federal court's findings, however, are persuasive authority in this case. The only basis that the federal court had for dismissing a much narrower claim, a Brady claim, was the technical federal doctrine of qualified immunity, a doctrine that has absolutely no applicability to the state law claim of malicious prosecution. And so I think it is entirely appropriate for this court to look at Judge McDade's finding, one, that there is a jury question as to intentional suppression of the Murray polygraph, and two, his finding in footnote eight, that that could have changed the prosecutor's mind as to whether Murray was a viable suspect. So I want to be clear that we win even under, or at least we're entitled to a jury trial, even under the defendant's pressure, influence, or misstatement test. And the influence, of course, doesn't end there. The prosecutor testified that he considered the entire file, the entire investigation, when he made his decision to indict. So of course it cannot be said without a trial that that investigation, manipulated and curated to nail Alan Beeman, did not have an influence on the prosecution. At minimum, it's impossible to conclude that as a matter of law. In fact, in the prosecutor's own words, this case could not have been won without Tim Friesmeier. So we do win under the defendant's test. But the problem is that the appellate court also erred as to the test, because it failed to apply the ordinary rules of legal causation and cause, in fact, to the defendant's intentional misconduct. Instead, inventing a specialized causation rule to apply only in malicious prosecution cases, no other category of tort. And the defendants, and under that standard, police are immunized for intentional wrongful conduct so long as they did not pressure, influence, or lie to the prosecutor. The problem with that standard is that pressure, influence, or misstatement is one way that the prosecutions, but it is not the only way. Under the defendant's test, if police torture a confession out of someone, or plant evidence, or as in this case, hide evidence from the prosecution and manipulate an investigation in order to nail a particular individual, none of that is actionable so long as the prosecutor knew about it. That is a standard that would weaken protections for police accountability, protections against wrongful convictions in this state. No prosecutor could have indicted Allen if the police had conducted a fair and honest investigation. Can you tell me in terms of the evidence that's been developed in this record, we know that there was a meeting in May, with a specific date, with the prosecutors in which the results of the nine-month investigation was presented, and a statement from one of the deputies, I believe, saying, we've heard enough, we're going to move forward with this case. Something like that, right? Is there anything else in the record of any other interaction between the state's attorney and the officers during the nine-month investigation? Yes, there was interaction. There's significant interaction, significant meetings between the state's attorney and the investigators. So throughout this nine-month investigation, the police and the state's attorney were working together in the case, in the investigation? In some respects, yes, that's true. The Murray polygraph was intentionally withheld from the prosecution. The mere fact that... You didn't answer my question. Maybe I'm misunderstanding. During the nine-month investigation, the state's attorneys were participating and were aware of what was happening in the investigation. They were aware of, yes, much of what was happening in the investigation. That is true. The mere fact that the state's attorneys were aware of what was going on, for the most part in the investigation, with the exception of things like the intentionally withheld Murray polygraph, should not immunize the independent, intentional, wrongful conduct of the police in this case. Because if it does, then as long as the prosecutor is a willing malefactor who knows about it, then the police will escape liability for their independent, wrongful conduct without which the indictment would not have been possible. This is a case where if the investigators had conducted a fair and honest investigation, if they had not manipulated time trials, if they had not twisted the evidence in order to inculpate Alan Beeman, if they had seriously investigated suspects like John Murray... Did Reinhart and Salk specifically reject one of the officers' suggestion to continue the investigation? It appears that that is the case, yes. Does that have any import on the action? It does not. And the reason it doesn't is that we ought to look at this from the standpoint of causation. The effect of the entire investigation in causing the indictment. And our position is that the indictment would not have been possible, regardless of what happened in that last meeting, without the intentional, wrongful conduct of the investigators in this case. And in fact, Suk testified that if he had known about the Murray polygraph, he would have considered it important and asked more questions about it. And that's why Judge McDade said, in footnote eight of his opinion, that perhaps he would have viewed Murray as an alternative suspect if he had known about that polygraph. Does it hinge primarily then on the polygraph?  Is that the only piece of evidence, at least from your standpoint, that the state's attorneys weren't aware of at the time that they decided to proceed? It is true that that is the only piece of evidence that the state's attorneys were not aware of. But focusing only on what the state's attorneys knew immunizes intentional, wrongful conduct so long as they knew about it. And the intentional, wrongful conduct in this case is truly shocking and extraordinary. Just one more question on the polygraph, and then I'm done on that. Are we going to hear it differently from the state? Is there a question of fact as to whether or not the state's attorneys had the polygraph information when they decided to proceed with the indictment? That is undisputed. I imagine the opposing counsel will say that there is a disputed fact as to whether Warner intentionally withheld it, and that's exactly what Judge McDade found. No question as to the fact that it was not concealed, question of fact as to intentional concealment. Thank you. I didn't understand your answer to Justice Thomas's first question. Do we look at the information that was available to the prosecutors at the time the indictment came down? And that's the Murray polygraph? Or are you talking about you should consider things that have been developed that were developed afterwards? Oh no, I'm not saying anything that was developed afterwards. They had the polygraph. They had all of the information that we are relying upon for misconduct at the time. The misconduct is not limited to the polygraph. I want to be very clear about that. Friesmeier committed perjury before the grand jury. He was asked a direct question. Has the investigation located anyone other than Alan Beeman with any conceivable motive to kill Jennifer Lockmiller? He answered that question, no. He concealed John Murray, the very concealment before the grand jury that led this court to append the jury verdict. He doctored the time trials, driving fast when that would hurt Alan and driving slow when that would hurt Alan. And he concealed in his report a detailed 56-page single-space report that mentioned every other single time trial that was performed. He omitted the one time trial that exculpated Alan Beeman. He told the grand jury about it on a direct question, but then he omitted it again from his jury testimony. He failed to talk to some of the people that Jennifer Lockmiller encountered just in the days before her death, men who were flirting with her at bars and who she gave her number to and who kept calling her. The police didn't even attempt to find these individuals. That's why our law enforcement amici in this case are so concerned about how this sort of misconduct can cause wrongful indictments and prosecutions. That's why our expert, a senior FBI investigator with 30 years of experience, was horrified at what he called the utter disregard for the truth in this investigation. This is about causation. Without an investigation manipulated and curated in the way that the defendants did, it would not have been possible to indict Alan Beeman. And that's but for causation. And legal causation is a question of foreseeability. Of course it is foreseeable that when police conduct a dishonest, dishonorable investigation in order to nail an individual, a guy who, by the way, is in Rockford when the murder occurs in normal, of course it is foreseeable that a prosecutor will issue a wrongful indictment. In fact, this court said just last year in People v. Ringland, a prosecutor ordinarily relies on police and other agencies for investigation of criminal acts. In short, without a trial, how can we conclude under any standard that these detectives who withheld evidence from the prosecutor and who fashioned a manipulated and curated a police file to nail him, how can we... that the substantial role test is proper, how do we define the test? We define the test as a significant role in commencement or continuation of the investigation. I'm sorry, of the prosecution. That's a very important distinction. Which the investigators cause through intentional wrongful conduct. That's the causation requirement and the commencement or continuation requirement, which in some ways are different sides of the same coin. That element under our test of intentional misconduct causing the indictment is critical. We simply recognize, unlike the appellate court, that misconduct, intentional misconduct, that can cause a wrongful conviction is not limited to the narrow category of pressure, influence, or misstatement to the prosecutor because that would immunize too much intentional misconduct and weaken protections that ensure police accountability. Judge, does your position fail if we agree with the Seventh Circuit's description where they say the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers or knowing misstatements made by the officers to the prosecutor? If we agree with that test, do you lose? No. You should not agree with that test for the reasons that I stated, but we are entitled to a jury trial under that standard, which is essentially the pressure, influence, or misstatement test. The withholding, the intentional withholding of the Murray Polygraph is essentially misstatement, withholding a part, a key part of the investigation, part of what led this court to upend the conviction. And how can we say without a trial that not only that, but all of the conduct that made the indictment possible did not influence the outcome? This is a summary judgment, so we're really talking about facts here. Yes. I would think that maybe the test might be stated by both sides somewhat similarly, and then it would come down to what is intentional misconduct. So is there a factual dispute here? Is that what you're really arguing, that when the police officer said, his name was Warner, said, I don't remember what happened, I didn't intentionally withhold the polygraph, I gave it to someone else, and I don't know what happened to it, that do you have evidence to dispute his testimony that would create a question of fact that needed to go to the jury? Oh, absolutely. The question of fact is twofold. One, the trail goes cold at him. That's undisputed. And two, there was a protocol in place for what he was supposed to do with that polygraph. The defendant, Zayas, testified to. He was supposed to give it to all of the investigators. He was supposed to give it to Zayas. He was supposed to give it to the prosecution. It's undisputed. He did none of that. And that is why Judge McDade found a jury question, a question of fact, on the question of intentional withholding by defendant Warner. I'll turn to the ‑‑ we urge the Court to reach not only the commencement or continuation prong, but to reach all of the bases for the circuit court's decision and to remand this case for trial. I touched briefly at least on probable cause. Without a trial, how can we say as a matter of law that there was probable cause when the police did not have a shred of evidence, not a shred of evidence, placing Allen in normal? There is no evidence in this case that he was in the right town. He was in Rockford. The defendants knew that based on the bank video and his whereabouts later in the day. Different town. It is absolutely extraordinary for the police to arrest someone for murder when there is no evidence placing him within 130 miles of the crime. Guy in Rockford. Crime in normal. Mr. Shapiro, we can only look to the evidence at the time. Yes. Not what we know now. You can look to the evidence that the police had at the time. At the time. Correct. The evidence that the police had at the time, they didn't have a shred of evidence placing him in normal, and they knew that he was in Rockford based on the bank video, based on his whereabouts later in the day. The idea at the very best, the idea that he could have made it to normal, is a mere theoretical possibility. A mere theoretical possibility is not probable cause. The defendants say on page 38 of their brief that there's a disputed issue as to whether opportunity was improbable. We submit. I know you're rolling, but the state's attorney was aware of all that. The state's attorney had the same evidence that you're talking about when they made the decision to prosecute. Except for the Murray polygraph, that is correct. But on the probable cause prong, that's not a question of what the state attorney knew. There was a bank video that showed that he was in normal two hours, generally the time of death, whatever it was. The state's attorney knew that. He did know that, but probable cause looks to the totality of the circumstances, does not distinguish between what the prosecutor knew and did not know. Thank you, Your Honor. Thank you. Counsel. May it please the Court, Counsel. My name is Thomas DeCiani, and I represent the defendants in this case. I would like to turn down the heat a little bit because I think Mr. Shapiro has tried to press buttons that are emotional as opposed to the legal issues before this Court. I would say that every single Court that has looked at this has studied a huge record, has said the same thing. They've denied, disagreed that there was intentional misconduct by any of the defendants. What the plaintiffs are trying to present in this case and convince this Court to accept is a brand new cause of action that this Court for 150 years has never recognized, and it's a cause of action that eliminates the prosecutor from the determination. They've said it as clearly as they possibly could have today. Even if the prosecutor knew about it, we want a cause of action against police officers if they conducted an investigation that was, they say, shoddy, or they say did something that the prosecutors knew about. For 150 years, this Court has said that prosecutors prosecute, and the extent to which a non-prosecutor is going to be held liable or be able to be made a defendant in a malicious prosecution case depends on their, to what extent they influenced and engineered a prosecutor to do something that the prosecutor wouldn't have done absent the conduct that they were engaged in. So if you tell the prosecutor, if you exert influence on the prosecutor, that convinces the prosecutor to go forward with a bad prosecution, that is actionable. If you do, if you hide evidence from the prosecutor, or you fabricate evidence and give it to the prosecutor, and that makes the prosecutor go forward with a prosecution that they would not have gone forward with, that is actionable. That's been the law in this state for 150 years. They are trying to give, ask this Court to create a brand-new cause of action that eliminates the prosecutor's involvement in the case, that regardless of what the prosecutor knew about, many of the questions that have come from the Court were properly focused based on Illinois law. Did the prosecutor know that? Did the prosecutor, were they aware of that? Were they involved in the investigation? Yes, absolutely. They knew about everything. And I'll talk about the polygraph in a second, because that's the one thing they didn't know, but it doesn't matter in this case. They told, Mr. Shapiro gave you a horror story of torture of a person and torturing a confession out of them, and if the prosecutor knew about it, it's not actually, the police get off. That's so absolutely wrong, because it might not constitute malicious prosecution under Illinois law, but that's malicious prosecution under Illinois law. It's not the only cause of action that could be raised against the police officer who engages that type of conduct. There is a whole panoply of federal civil rights law that would reach that situation. There are criminal consequences, and we've seen in Chicago recently, criminal cases brought against police officers who've engaged in that type of conduct. There are sanctions of all types that reach that type of conduct. Malicious prosecution has never been the cause of action that this state has recognized to reach that type of situation. This court, in many cases, has discussed a causation standard that is absolutely the same as the Fourth District announced in this case. It is not new law. For causation by a non-prosecutor to cause a prosecutor to bring a prosecution that the prosecutor would not ordinarily have brought, had they not been influenced in an improper way, has always been the standard. Now, some cases discuss it in different ways. Some cases talk about significant role, but where the cases that have talked about significant role, they have not equated significant role with causation. What they have said was when a police officer or even a non-police officer plays a significant role, that is a category of people who could potentially be held liable for malicious prosecution. However, all the other elements of the cause of action have to be met, including the commencement, initiation cause of action. So significant role has never been a standard that says what the plaintiffs want you to say it is. If you conducted the investigation, if you were a lead investigator, if you were the head of the investigation unit like Frank Zayas was, if you tested an alibi, if you took statements from witness X, but you didn't take the same kind of statement from witness Y, you are now playing a significant role and that makes you susceptible to malicious prosecution under the first element of it. That's never been the law here. This court has, and all the courts in Illinois, have never extended it that far and they shouldn't. And the reason, Your Honors, I would say, is that it's terrible public policy. What they want you to do is to look at the, they want you to create a cause of action in which the plaintiff or court can look at the investigation. And we'll use this case as an example. The police in this case, and not just the police, the state's attorney was there right at the beginning, just as they asked the question, how involved was the state's attorney? The state's attorney met at least five times with all the investigators during the course of this investigation, including the one where the decision was made to go forward. State's attorney was there when the body was first found of Ms. Lockmiller. There was a decision made by all of them, considering it, that this is not a burglary, this is not a forced entry, all the evidence that they looked at indicated that it wasn't that, that it was somebody who knew her and it was a crime of passion. Those are the decisions they made. They want you to create a cause of action where you can, somebody can sue the police because the police came to a conclusion like that. Is that what we want to subject police to in criminal investigations? That's what they're looking at. That's what they're asking you to do. You will not find a case, I submit to you, in which a prosecutor was more aware of the facts, more aware of the evidence, more involved in the investigation, and was unaffected or was convinced, based on the prosecutor's involvement in the case, that Mr. Beeman was the guilty party and the prosecution should be brought. They talk about terrible intentional misconduct that stains the system. Every court that's looked at this has disagreed with that. Justice Thomas, you asked the question about whether, if you agree with the Seventh Circuit, do they lose? They absolutely lose, and the Seventh Circuit's decision talks about Illinois law. And Illinois law, going back, has relied on the Restatement Second, the standards that are in there, the CJS. These are nationwide compilations of the law of malicious prosecution. So this has been a very limited prosecution, limited cause of action in Illinois, and the way they want to extend it, it would be massive. It would be radical, and it would be something that I submit to you would put police officers in jeopardy of lawsuits over and over again. The horror story that they're telling you about is a red herring. That is actionable under federal law, and police can be held accountable in many different ways for the type of misconduct that they allege. Now, what did they say that our people did wrong? Timothy Friesmeier lied at the grand jury. Well, the Seventh Circuit said this about that allegation. He did not lie. That was after a study of the record that was prepared in the case. He did not lie. And the Fourth District, in its decision in this case, studied that and agreed. He did not lie. And they say he manipulated time trials. He tested the alibi. The plaintiff gave one time frame prior to the indictment, prior to the arrest. After the arrest, his mother came forward to say, no, I came home and found him in bed, saw him in bed asleep, an hour and 20 minutes prior to what the plaintiff had told the police when he got home. So the window of opportunity that the prosecutor was working with at the time that he made the decision to prosecute shortened as a result of evidence that was presented by Mr. Beaman and his defense team. So what did they do? They tested the alibi. Does that make opportunity impossible? Now, they don't have to believe the alibi. They don't have to believe his mother's story, which is inconsistent with his, about when he got home. That doesn't destroy their ability to go forward. There are alibi witnesses who are biased and not believed in many alibi cases. They don't have to believe that. But nevertheless, they didn't leave it unanswered. So they wanted to know, even given the mother's alibi and her version of what the window of opportunity was, let's see how that works. So Friesmeier drove the different distances from A to B to B to C to see how long does it take, what is the quickest way you can do it in, and he brought that to the prosecutor. And then the prosecutor, based on that decision, had to make a calculation. Well, does that eliminate our case? Does that destroy our case or do we continue to go forward? And the prosecutor said we continue to go forward for a number of reasons. Now, they say he sped up to make it look like Mr. Beaman could have made it to normal and back in an unrealistic period of time. And that's what he told the prosecutor. Now, what type of logical analysis does the prosecutor have to make? Well, so you say if he went 70 miles an hour, he could have done it in X amount of time. That tells me, if that's an unreasonable amount of time, that tells me if he only did it in 60 at 60, then I have to think that it's going to take longer. Is there some huge misconduct here? This is a police officer testing an alibi. And are you comfortable creating a cause of action that would say that because a police officer tested an alibi in a case that later on turned out to fall apart, we're going to hold that police officer liable because of what they discovered in testing the alibi? They talk about hiding the alternate time bypass route. And this was to test the time it would have taken Mr. Beaman to get from the bank to his home on the day of the murder. And Friesmeier testified that there were two ways to do it at the grand jury. He testified the direct route, which he believed. Didn't Mr. Friesmeier leave out some information or omit information from his police report? The bypass route did not make it into his police report. That is correct. He omitted it, right? Well, I wouldn't say he omitted it. I'd say it didn't make it in there. There's no evidence that he purposely hid it because he testified about it at the grand jury. But didn't Warner intentionally fail to disclose the evidence regarding the Murray's polygraph test? Absolutely not, Your Honor. Absolutely not. And I say this with the utmost respect. Warner had a very limited role in this investigation. He interviewed a few witnesses early on, but he was the evidence person at the normal police department. He got this polygraph report because he's the evidence person who got it. So if you were to adopt their significant role theory, Warner would fail just by that because he didn't play a significant role in this. He was involved early on and had a very limited participation. So he says, when I got it, I would have given it to Tony Daniels, who's not a defendant in the case. He's one of the other investigators. I would have given it to Tony Daniels because that's what I would do. Tony Daniels was in charge of investigating John Murray, not Timothy Friesmeier. Timothy Friesmeier never met John Murray. They tell you that Friesmeier did something to conceal something about Murray. Friesmeier had nothing to do with Murray. And all the other courts that have looked at this have agreed. He had nothing to do with Murray. Murray was investigated by Tony Daniels, who's not a party to the case. Tony Daniels himself gave three separate possibilities for what happened with that polygraph report. He said he either gave it to me and I lost it. He either gave it to me and I gave it to a clerk that used to do our copying and that got misplaced there or it just fell through the cracks somewhere. And Tony Daniels also said, I have no reason to believe, there is no evidence, no reason to believe that David Warner would have intentionally hidden this report from anyone. Now, it doesn't matter. They want to say this is a fact issue. We're going to have a whole full-blown jury trial about this polygraph report. The polygraph report had to do with John Murray, and it wasn't even inconclusive. It was uncompleted. That's all it said. It was uncompleted. Suk knew everything there was to know about John Murray except this uncompleted polygraph report. But wasn't Suk the only state's attorney that testified and he prosecuted Beeman with his testimony and speculation? Why didn't the state's attorney retry Beeman? You said you speculated to that. Yeah, well, the case was 13 when this court overturned the conviction, sent it back to the prosecution. The determination was made, this is what we think. There was no evidence. There would be a plaintiff's obligation to prove it under your SWCC decision as to why it wasn't re-prosecuted. However, Judge Suk said that from his experience in prosecutions, trying to put that case back together 13 years later would be next to impossible. All these witnesses, most of these witnesses were students. What about the prosecutor who now repressed the charges? Why didn't he testify? I can't answer that question. I don't know. The prosecutor, I know he was a judge by then and that wouldn't have precluded him. But he did not testify about that. That's all I can really say about that part of it. So the decision to not retry it was made by a different set of state's attorneys? Yes. Because the original state's attorneys had become judges. They were judges, that's correct. It was a different set of state's attorneys. But here's the point. Suk knew everything there was to know about John Murray. And he was convinced John Murray was not a suspect. He had John Murray on his witness list to call. Because one of the times that Mr. Beeman broke down Jennifer Lockmiller's door to break into her house, John Murray was there. So the state's attorney, Mr. Suk, was going to call John Murray as a witness. And Murray at that time was facing charges of drug delivery. He was facing charges of domestic battery. And an order of protection from his girlfriend was out. Judge Suk, the prosecutor, knew all of that. So he was convinced. He said that strange, he called it strange report about the polygraph. And this is, of course, after the fact. I wouldn't have known what to make of that. That didn't tell me anything that was suspicious about Murray. And in fact, Suk knew that Murray had been scheduled for a second polygraph, not a polygraph, and didn't show up. So if there was something to be suspicious about, and that might have affected his determination as to whether Murray was a viable suspect, then that would have done it right there. Suk knew everything there was to know about Murray and didn't consider him a suspect. So it is a red herring to say that this polygraph that never made its way to the state's attorney's file, and we don't know why, and even the person who would have been responsible for it doesn't think that there was some misconduct involved. Was Suk ever asked specifically whether or not if he had this polygraph information, he would have proceeded against him? Was that specific question ever asked after the fact? At the post-conviction proceeding, he was asked, what would you have made of this? He said that it's a strange thing. I might have asked a question about it, but it was strange. At the case, during the case, at his deposition, he was asked several questions about it, and he said, I didn't believe Murray had a motive. And this wasn't going to change my mind. I never thought Murray was a suspect, and the polygraph was not going to make him a suspect, in his mind. Suk knew everything there was to know about John Murray. In closing, I see my time is up. In closing, I would ask you to adhere to what has been the law in this state forever, on what is malicious prosecution, to not expand it to what the plaintiffs want it to be, to make it a negligent investigation cause of action, and to affirm the appellate court. Thank you very much. Thank you. Mr. Spiro, if we go back to how the Seventh Circuit handled that, that quote that I gave you earlier from the Reid case, it talks about, forget the pressure or influence, just go to the or knowing misstatement made by the officer to the prosecutor. And I think you said that the failure to give the polygraph report is, in your terms, a misstatement in them not doing that. What about the knowing part? Does that come down to a question of fact? I mean, we heard Mr. DeCiani say it either fell through the cracks or the secretary or clerk lost it, or I forgot the person's name who was in charge, but he lost it. What about the knowing aspect of that? What I believe we heard from opposing counsel was a trip through the mind of defendant Warner with regard to his state of mind. That is not something that can be resolved as a matter of law. And that is why Judge McDade found a jury issue as to intentional suppression by defendant Warner of the Murray polygraph report. And it is undisputed that Warner was the last person to have it. It was undisputed that there was a protocol in place for its dissemination that he knew about and did not follow. And that is why there is a jury question as to intentional suppression. And then the second piece that we were just hearing a moment ago, where the decision maker, the deputy state's attorney said, had I known about this report, it would not have changed my mind. Judge McDade says in footnote eight of his opinion that if... Is this Justice McDade in dissent? No, this is Judge McDade, the federal court who heard the federal case and rejected it ultimately on qualified immunity grounds and was affirmed by the Seventh Circuit on the same grounds. He found a constitutional violation and he found that in footnote eight, that if the prosecutor perhaps would have viewed Murray as a viable suspect if the polygraph had been turned over. And to quote the prosecutor's direct testimony on this point, R-101-09, he says that the polygraph would have been useful for investigative purposes and he would have asked some questions and looked at it more. We cannot say as a matter of law without a jury trial that this did not influence the outcome. Listening to opposing counsel's presentation, I think that it was largely knocking down a straw person. No one in this case is suggesting liability for a shoddy investigation or for being a lead investigator or for a negligent investigation. What we are talking about is liability where defendants maliciously conduct an investigation, where they engage in intentional wrongful conduct that results in an indictment and where there is no probable cause. This is not something that normal police officers who are doing their job in the honorable traditions of the profession do. This is extraordinary misconduct. And the opposing counsel downplayed some of it. The Seventh Circuit never said that Friesmeier did not lie to the grand jury. It is clear as day in his testimony he was asked if there was anyone with any conceivable motive other than Mr. Beeman to kill Jennifer Lockmeyer. He answered that question, no, that is perjury. It is perjury on the very same fact. It is not perjury if it is true. Now obviously this is a huge record and I will be the first to admit I have not read every word of the record yet. But we just heard that the Deputy Assistant State's Attorney said that this polygraph would not, he was in charge of investigating the Murray angle and he did not believe that Murray was a possible suspect. Isn't that, is it something like that I am trying to paraphrase of what he said? Why then is it an intentional malicious lie for the police officer to echo what the State's Attorney said? First of all, the State's Attorney didn't know about the polygraph. And this court found that Murray, unanimously found that Murray had a very clear motive. He was a steroid crazed drug dealer. He was a guy who lied about his alibi, who lied about having sex with a victim, who took a polygraph that this court found to be intentionally invasive. So maybe we disagree with the decision made by the State's Attorney, but we are in a different situation here. We are looking at was this intentional, was this a lie when the police officer is tracking the same position as the State's Attorney who made the decision to charge him? Why is that an intentional lie? Based on all of the clear evidence that Murray was a very serious suspect and that the defendants were focusing instead maliciously on Beeman, a jury doesn't have to accept Friesmeier's self-serving statements that he was telling the truth. That's why we have jury trials, to go into a state of mind where there is such a clear, where we're talking about a guy in Rockford and Friesmeier goes to the grand jury and he says about the guy who's in normal, who has such a clear motive to commit the crime, that the investigation did not uncover anyone with any conceivable motive. That was the phrasing of the question, any conceivable motive. A jury can infer that that is a lie. This is extraordinary misconduct. No one is talking here about trying to immunize ordinary police misconduct or ordinary negligence or every time an investigation goes wrong, there is liability. Friesmeier submitted a 56-page single-space report with every single time trial memorialized in it, except for the one that proved Alan Beeman's alibi. That is the only one he admitted. Just as the jury doesn't have to believe his self-serving assertions that he was telling the truth, it doesn't have to believe I just accidentally omitted it. He can say, oops, but the jury does not have to believe in the face of, where it can draw inferences of intentional misconduct, that it was just incompetence. Is that the, the more I hear this case, the more I think this is a simple case. This is about summary judgment standards. Is there a question of fact here? Right? That's all we're really talking about. Is there sufficient, is there a question of fact? We have the testimony on one side, and you're, the police officer says that this is, says whatever he said to the grand jury. The state's attorney says that's exactly the same as what I believe. And what evidence is there in this record to show that when the two of them said those things, that that was untrue? Why must this go to a jury? What is the evidence to counteract in, in this record that their clear statement that they did not believe that Murray was the suspect? I, I think I've addressed that particular point as best I can, but there is other clear evidence of, of misconduct. It's not, it's not just about Murray. It's about the omission of the exculpatory time trial. He also told the grand jury that none of the neighbors had any significant evidence, where David Singley testified that he heard people in the apartment as of 2 p.m., which made the, which made it totally impossible. There is a whole record of intentional misconduct or conduct that could be viewed as intentional by a jury. That's why there is a jury issue. There's also the question of fact, the very question of fact that Judge McDade found, as to intentional suppression of, of the polygraph. No court, contrary to Mr. Deese, to opposing counsel's argument, has ever said that the pressure influence, or this court has never said that the pressure influence or misstatement test is the test for a commencement or continuance of a prosecution. It has never said that. The notion that there is some sort of longstanding law that this case would upend is simply false. This is a case of intentional misconduct, manipulating and curating a police investigative file that made the prosecution possible. There is nothing new or radical about saying that intentional misconduct that results in a malicious prosecution is actionable, nor can we simply say, oh, let's hand it over to the federal courts, even if police coerce a confession out of someone, so long as the prosecutor knows about it. Prosecutors are not misconduct washers. Mr. Shapiro, with regard to my question before, if you finished it, I'm not sure, but I wanted to know if there was any more evidence for the probable cause that they would have, didn't have for the probable cause for the indictment. The principal point here is that they didn't have a shred of evidence placing him in normal. He was 130 miles away. They knew that. There was not a single piece of evidence placing him in normal. A mere theoretical possibility is not probable cause. This case deserves to go to a jury so that it can have the opportunity to right the terrible wrong that the defendants did in this case through intentional misconduct. Thank you, Your Honors. Thank you. Case number 122654, Beeman v. Friesmaier, will be taken under advisement as agenda number 13. Mr. Shapiro, Mr. DeCiani, we thank you for your arguments today. You are excused.